J. C. YORK & COMPANY, APPELLEE, V. W. J. BOOMER ET AL.,
APPELLANTS.

FILED JUNE 16, 1913.   No. 17,040.

1. **Trial: INSTRUCTIONS.** If the issue is fairly presented to the jury in a proper instruction, the judgment will not be reversed because the same issue was incompletely and defectively stated in another instruction, unless it affirmatively appears that the complaining party was prejudiced thereby.

2. ——: ——. In an action to rescind or annul a contract for fraud, if the plaintiff alleges several grounds for such relief, a verdict in his favor will not be set aside because of error of the trial court in withdrawing from the jury a part of plaintiff's cause of action; sufficient remaining to justify the verdict. Such error is without prejudice to the defendant.

3. **Contracts: SUIT TO RESCIND: EVIDENCE.** The evidence is found to be sufficient to support the verdict of the jury.

APPEAL from the district court for Kearney county: HARRY S. DUNGAN, JUDGE. *Affirmed.*

*Adams & Adams,* for appellants.

*F. L. Carrico* and *J. L. McPheely, contra.*

SEDGWICK, J.

This action was begun in the district court for Kearney county as an action in replevin, and a part of the property involved was taken under the writ. The plaintiff filed a petition which is in form a petition in equity to rescind or annul a contract which the plaintiff claims was obtained by fraud, and under which the defendants obtained possession of the property. The cause was submitted to a jury, and there was a verdict and judgment for the plaintiff, and the defendants have appealed.

It does not appear from the briefs that there was any controversy between the parties as to the manner of the trial, and no objection is now made on that ground. The petition alleged that the plaintiff is the owner and entitled

to the immediate possession of a stock of harness and other goods constituting their stock in trade in Minden, Nebraska, of the value of $3,800, and that the defendants wrongfully and unlawfully obtained the.goods and chattels from the possession of the plaintiff. The petition then alleges that on the 17th day of June, 1910, the defendants represented that W. J. Boomer was the owner of a tract of land in Lincoln county, Nebraska, consisting of 320 acres, and represented that it was of the value of $8,000, when in truth and in fact it was not of greater value than $4,000; and represented that a purchaser for said land, one C. K. Gittings, had been secured who would enter into a contract to purchase the land for the sum of $8,000, and that if the plaintiff would exchange its stock of goods for the defendants' land, the said Gittings would take the land and pay therefor the sum of $8,000 and that thereupon two contracts were executed, by one of which contracts the defendants agreed to exchange the said land for the said stock of goods and the plaintiff agreed to give in exchange therefor the said stock of goods, valued at $3,800, and to pay for the same $1,200 on the 1st day of August, 1910, and then to take the land subject to two mortgages, one for $1,400 and the other for $600, and to secure the payment of the remaining $1,000 of the purchase price of the land by a mortgage. By the other contract the plaintiff agreed to sell the said land to the said Gittings for the sum of $8,000 "in the manner following; $400 cash in hand paid, the receipt whereof is hereby acknowledged, and the balance as follows: $4,600 on the 1st day of August, 1910, at which time second party is to assume one mortgage of $1,400 and one mortgage of $600 and one mortgage of $1,000 now on or to be placed on said land, and the first party is on the 1st day of August to execute deed according to this contract subject to above described mortgages. * * * The said two contracts were * * * both at time of execution delivered into the possession of defendant W. J. Boomer, upon the express condition then and there made orally, and the delivery of same depended and the final

consummation of said contracts upon giving same unto
the possession of said W. J. Boomer, was that same be not
finally delivered unless full and complete performance be
made by all the parties to both contracts and that there
be full and complete performance by said C. K. Gittings
of all covenants and agreements contained in contracts
executed by him. And relying upon said representations
and believing same to be true, the said contracts as signed
*was* given into the possession of defendant W. J. Boomer
and plaintiff delivered said stock of goods." And that
when said contracts were executed they were taken by the
defendant Boomer and deposited in the bank, in accord-
ance with the understanding of the parties, to remain on
deposit until the 1st day of August, when the deeds were
to be executed and the exchanges made, and that, when so
taken by the said Boomer, each of the said contracts con-
tained the following clause: "And in case of failure of
the said party of the second part to make either of the
payments or perform any of the covenants on his part
hereby made and entered into this contract shall, at the
option of the party of the first part, be forfeited and de-
termined, and the party of the second part shall forfeit
all payments made by him on this contract." And that
afterwards the said defendants altered the said contract
between the plaintiff and the said Gittings by erasing from
the said clause thereof the words "at the option of the
party of the first part," so as to reserve to the said Git-
tings the right to forfeit and determine the contract; and
that, "at the time set for the performance of the conditions
in said contract, the said C. K. Gittings refused and now
refuses to perform the conditions contained in said con-
tract, all as prearranged by and between them, the said
C. K. Gittings, W. J. Boomer, and the W. J. Boomer Im-
plement Company. And plaintiff elected to and by reason
of the fraud on the part of said C. K. Gittings, W. J.
Boomer, and the W. J. Boomer Implement Company, to
rescind said contract, instituted these proceedings, and re-
plevied the property herein described."

To this petition the defendants filed a general denial. The petition, perhaps, is not very artistically drawn, but no objection was made thereto, and there was no motion for a more specific statement, and the evidence, so far as is shown by the briefs, was taken in all respects as though the petition was sufficient.

The principal contention of the defendants in the brief is "that the verdict is wholly unsupported by the evidence and is contrary thereto." Boomer & Company were in the hardware business in Edgar, Nebraska. One Stanley was a traveling man, selling hardware, and, perhaps, other goods. He visited Minden and stopped at York's store. He told them he knew of a man who wanted to trade some land for a stock of goods. After some talk he wrote the name and address of Mr. Boomer on a piece of paper and left it with York. York wrote a letter to Boomer telling him that he understood that he wanted to exchange some land for a stock of goods, and that he had a stock of goods, etc. Boomer immediately called them up over the telephone, and right away afterwards called at their store. They went out to see the Boomer land, which was 320 acres, and Boomer priced it at $25 an acre, being $8,000. The stock of goods was then valued by the parties at about $4,000. After looking over the land York told Boomer that he could not deal at all upon that basis, and that he could not take the land for the stock of goods, unless they could find a cash purchaser for the land. Soon afterwards Stanley, the traveling man, informed York that he had found a cash purchaser who would buy the land. This was Gittings, and not long afterwards Boomer and Gittings came together to see Mr. York. York testified that he told them when they were both together (that is, Gittings and Boomer) that he would not trade the stock for the land, unless the land was sold at the same time. He would not make one deal without the other. When Gittings and Boomer met in the presence of York, York introduced them. They told him then that they had never met, but soon afterwards York testifies that they told him they had

8

talked the matter over before and had been acquainted some time. At all events, Gittings agreed to take the land at $8,000. There is no explanation why they did not make the deeds at once and close up the business, but they agreed, as York says, that it should be closed up on the 1st of August, which was about a month later, and so, instead of making the deeds and closing up then, they made the two contracts. Under one contract Boomer agreed to sell the land to York, and in the other York agreed to sell the land to Gittings. These contracts were written upon identical blanks; they were written by some stranger at Hastings, and were dictated by Mr. Boomer. It was agreed that they should be in the bank until the deal was consummated and the deeds made, and that they should not be delivered to the parties until that time. When the contracts were completed Boomer put them both in his pocket and they all went to the bank. Boomer turned the contracts over to the bank. These blanks upon which the contracts were written contained the clause to the effect that, if the purchaser failed to carry out the contract, the seller, at his option, might forfeit the first payment and keep his land. It turned out afterwards, when Gittings refused to complete the contract and pay for the land as agreed, that the option clause in his contract had been erased and so changed that the purchaser was not compelled to take the land, but merely to forfeit his first payment; and as the first payment was only $400 and the amount that York was paying for the land was over $4,000 more than he regarded as its true value, Mr. Gittings concluded to let York have the $400 and not take the land. Mr. York testified positively that he read both of these contracts at the time they were signed, and that when these contracts were put in Boomer's pocket this clause had not been erased. If the jury believed this testimony, it would mean that Gittings and Boomer, or one of them, changed the Gittings contract afterwards so that Gittings would not be compelled to take the land. This was quite important, as Gittings says he was worth $75,000, and of course did not want to be com-

pelled to take the land unless he chose to do so. An arrangement of this kind, if it was as York claimed, and as the jury found, could not be proved by the direct evidence of witnesses who knew that they had agreed to so swindle Mr. York. Such transactions are always to be proved by circumstances that indicate fraud, and by the result of the deal. If the jury believed that the Gittings contract was so changed after Boomer took possession of it as to enable Gittings to avoid it by merely forfeiting the $400, and believed that the contracts, as soon as executed, were taken by Boomer together and by him placed in the bank, they must have believed that the change was either made by Boomer, or that he knew it was made and knew the reason of its being made. It turned out that York bought the land, if this contract is carried out, with mortgages on it for more than he would be willing to pay for the land, and that he must pay $1,200 in cash and give the stock of goods at $3,800 and assume and give additional mortgages, so that the result is to defraud York of something more than $4,000.

The defendants say in the brief: "Suppose it was true that this matter of the trade or trades had been prearranged by Boomer and Gittings, and neither of them ever said a word to the Yorks about it, or made any representations, or made any agreement that both deals should go through, and the trades had been made, just as they were, then in such case would there be actionable deceit or fraud?" Both of the Yorks testified that the agreement was that both contracts should go through or they would not make the exchange. They seem to be frank and straightforward in their testimony, and of course the jury were at liberty to believe them, though contradicted by the other parties to the alleged fraud. The jury believed York, and we cannot believe that they were so clearly wrong in so doing that we are compelled to set aside their verdict.

The court excluded some competent evidence offered by the plaintiff, and by its instructions withdrew from the jury some important issues presented by the petition and

evidence.  This was prejudicial to the plaintiff, but the defendants are not in a position to complain of these rulings.  One of the instructions complained of by defendants was incomplete, but the issue above outlined was fairly presented by another instruction.  We cannot extend this opinion with a detailed discussion of the instructions, which, from the nature of the case, were necessarily quite comprehensive.  The parties by this verdict are placed as nearly as may be in the position they occupied before the transaction was entered into.  We find no error in the record prejudicial to the defendants so as to require a reversal of the judgment.

The judgment of the district court is therefore

AFFIRMED.

ROSE, J., dissenting.

The facts constituting the fraud on which the relief granted is based are not pleaded.  The judgment, though affirmed as a decree in equity, was rendered on the verdict of a jury in an action at law and is not supported by any evidence.  The action was replevin.  Under the writ plaintiff seized the property in a harness store and saddler's shop at Minden.  The value of the stock was alleged to be $3,800.  Part of the goods in the store had been sold by defendants before the action was instituted.  The jury rendered a verdict in favor of plaintiff and fixed the value of the property which had formerly been a part of the stock, but not taken under the writ, at $1,400, and the damage for detention at one cent.  The effect of the judgment rendered on this verdict in the action at law was to cancel an executed bill of sale and two separate contracts for the purchase of a half section of land, though grantee in one of the contracts is not a party to the action of replevin.

The import of the petition in replevin is that plaintiff owned the stock, and, through the fraud of defendants, was induced to enter into a contract to exchange it for 320 acres of encumbered land in Lincoln county; that defend-

ants procured possession of the stock of harness and the storeroom June 18, 1910, and that plaintiff rescinded the contract of sale August 3, 1910. Any fraud which can be inferred from the petition may be summarized thus: (1) Defendants falsely represented the value of the 320 acres of land to be $25 an acre, whereas it was only worth $4 an acre. (2) A fictitious agreement or fraudulent representation by defendants that C. K. Gittings would purchase the land from plaintiff and pay $8,000 therefor. (3) By prearrangement among defendants and Gittings the latter promised to purchase the land from plaintiff with the intention of violating his contract, and attempted to carry out the fraudulent scheme, though it was agreed by all parties to both land deals that the sale of the stock of goods was contingent upon the performance by Gittings of his contract to buy and pay for the land. (4) The contract by Gittings to purchase the land for $8,000 was materially altered without the consent of plaintiff. The trial court properly instructed the jury that there was no evidence to sustain either the first or the second charge of fraud. Nothing but the other charges is left for consideration. Plaintiff is a partnership composed of James C. York and his father, James H. York. The Boomer Implement Company, defendant, is a partnership composed of W. J. Boomer and three brothers. Before any of the contracts were executed, the senior York had viewed the land and Boomer had inspected the saddlery. After negotiations by means of letters, telephone communications and personal interviews, the two Yorks, Boomer and Gittings met at Hastings, June 17, 1910. Three contracts were there drawn and signed on that date. One was executed by W. J. Boomer on behalf of defendants and by J. C. York on behalf of plaintiff. It obligated defendants to convey the land to plaintiff, to execute a deed at once, and to deliver it August 1, 1910. It bound plaintiff to make a cash payment of $3,800, to pay $1,200 August 1, 1910, to assume on the same date two mortgages, one for $1,400 and the other for $600, and to execute a mortgage for $1,000. Another

contract binding Gittings to purchase the land from plaintiff was signed by the vendee and by J. C. York. This contract obligated Gittings to make a cash payment of $400, to pay $4,600 August 1, 1910, and to assume three mortgages at that time, one for $1,400, another for $600, and the third for $1,000. In addition to the two contracts described, a bill of sale transferring the saddlery to defendants was executed by plaintiff. The next morning Boomer appeared at the First National Bank of Minden and in presence of Gittings and the Yorks deposited in escrow his deed conveying the land to plaintiff and the two land contracts mentioned. Gittings deposited with the bank his cash payment of $400, which has never been withdrawn. The Yorks testified that Boomer also deposited the bill of sale, but they concede that he withdrew it without protest from them before he left the bank, saying he was entitled to it. Since the trial court properly directed the jury that there was no evidence of the first and second charges of fraud, the verdict could only be sustained by proof supporting the third and fourth.

On the witness-stand the Yorks both said they stated to defendants and to Gittings, before the negotiations were concluded, that the sale of the stock of saddlery depended upon performance by Gittings of his contract to purchase the land, but they did not testify that defendants agreed to such terms, and there is no such proof in the record. The circumstances indicate the contrary. Though the parties undertook to reduce their agreements to writing, the writings do not show that the land contracts are dependent upon each other, nor do they state that the sale of the saddlery was contingent upon the sale of the land to plaintiff or upon the latter's sale to Gittings. The statements of the Yorks were merged in the contracts. It is neither alleged nor proved that there was fraud in drawing or in signing the contracts. Boomer kept the bill of sale without protest from plaintiff, and took charge of the store the next morning. Plaintiff turned the keys over to defendants within a few days, permitted a part of the stock

to be removed, and sanctioned sales in the regular course of business without making any demand for the proceeds or for an accounting.  The record not only contains no evidence that defendants agreed to the oral terms upon which plaintiff relies, but those terms cannot properly be inferred from the circumstances proved.  The reason Boomer left his deed at the bank instead of delivering it when executed is definitely stated in his testimony.  Plaintiff owed him a balance on the purchase price of the land sold by him to it and he refused to deliver the deed before the debt was paid.  Anxiety on the part of plaintiff to sell the saddlery was fully shown.  For the purposes of a sale Stanley was plaintiff's agent under an agreement that he should receive $25 for expenses.  The introduction of Gittings to Boomer by York, as disclosed by the evidence, was an innocent circumstance fully explained.  It is like others which occur every day in legitimate business transactions. It is only by attaching to innocent acts sinister aspects not shown by any evidence that even suspicions of fraud can be created:  Such suspicions may arise from negotiations resulting in any honest agreement, and the effect of entertaining them in this case is to interfere with the right of contract, to make the court the guardian of the improvident, to destroy the integrity of written instruments, and to deprive parties to contracts of rights guaranteed by the state and the federal constitutions.  The third assumed allegation of fraud is not proved.

The fourth imputation of fraud is likewise unproved. There is no evidence that defendants, or any of them, changed the Gittings contract.  Gittings testified positively that he made the erasure before the contract was signed.  If he was mistaken, a court of equity would reform the contract to express the agreement made and thus enforce it.  That he was financially able to perform is shown by undisputed proof that he was worth $75,000. Boomer was not a party to that contract.  He had no motive for changing it.  As to him the change was immaterial. If, contrary to the evidence, his dishonesty had been shown,

his business acumen, as conclusively established, is proof against the charge that he changed the contract and thus defeated his own negotiations by a foolish and unnecessary act. Facts constituting fraud are neither shown by direct proof nor by proper inference.

BARNES, J., concurs in this dissent.